### SCHWARTZ v. LOFTUS et al.

(Circuit Court of Appeals, Eighth Circuit. July 29, 1914.)

#### No. 4111.

1. EXECUTORS AND ADMINISTRATORS (§ 438*)—ACTION AGAINST ESTATE—ENFORCEMENT OF LIABILITY OF STOCKHOLDER—PARTIES.

The administratrix of a decedent is a necessary party to a suit to establish and enforce the statutory liability of the estate as owner of stock in an insolvent corporation.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1765–1785, 1790; Dec. Dig. § 438.*]

2. LIMITATION OF ACTIONS (§ 85*)—SUIT AGAINST ADMINISTRATRIX—ABSENCE OR DEPARTURE FROM STATE.

The provisions of Gen. St. Kan. 1909, § 5613 (Code Civ. Proc. § 20), that limitation shall not commence to run in favor of a person who is out of the state until he shall come into the state, and that, if a person leaves the state after a cause of action against him has accrued, the running of the statute shall be suspended during the time of his absence, apply to a suit against the administratrix of a deceased person to establish the statutory liability of the deceased as a stockholder in an insolvent corporation, and charge the estate with such liability, and limitation does not run against such suit during the time the administratrix is out of the state; the complainant having no claim which could be proved against the estate until personal liability of the deceased is established.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 449–455; Dec. Dig. § 85.*]

3. EQUITY (§ 72*)—LACHES—GROUNDS OF BAR—PREJUDICE FROM DELAY.

While the lapse of time is an element which courts of equity consider in sustaining or refusing to sustain the defense of laches, time alone ordinarily is not sufficient to constitute the defense, but, in addition thereto, the situation of the parties must have so changed as to render the prosecution of the suit inequitable.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 207, 210–220, 225, 226; Dec. Dig. § 72.*]

Appeal from the District Court of the United States for the District of Kansas; John C. Pollock, Judge.

Suit in equity by Arthur L. Schwartz against Mary R. Loftus, administratrix of the estate of Matthew Ryan, Sr., deceased, and others. From a decree dismissing the bill on motion, complainant appeals. Reversed.

Maurice H. Winger, of Kansas City, Mo. (Chas. Edwin Cooley and New & Krauthoff, all of Kansas City, Mo., on the brief), for appellant.

William W. Hooper, of Leavenworth, Kan. (Lee Bond, of Leavenworth, Kan., on the brief), for appellees.

Before SANBORN and CARLAND, Circuit Judges, and REED, District Judge.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

CARLAND, Circuit Judge. The bill in this case was filed for the purpose of enforcing against the estate of Matthew Ryan, Sr., the personal liability of deceased as a stockholder in a corporation organized under the laws of the state of Kansas, known as the Ryan Bros. Cattle Company. The defendants, except Mary R. Loftus, administratrix of said estate, are devisees and legatees interested therein, and third parties who have succeeded to portions of the estate by purchase or otherwise. The bill also prayed that the amount of the stock liability of Matthew Ryan, Sr., when ascertained, be charged as a paramount lien on the real estate described therein and on any personal property still remaining of the estate of Matthew Ryan, Sr., deceased. All of the defendants interposed a joint and several demurrer to the bill. The demurrer specified as grounds of demurrer: First, that the bill did not state facts sufficient to constitute a cause of action; second, that the bill on its face showed that any cause of action the complainant ever had against the defendants had long since been barred by the statute of limitations of the state of Kansas; third, that the complainant had no capacity to sue. The trial court sustained the demurrer on the second ground and overruled the same as to the other grounds. The bill by leave of court was then amended, and the defendants moved to dismiss the same for the same reasons that they had demurred thereto, except that the motion to dismiss specified, in addition to the statute of limitations of the state of Kansas, the ground of laches. The trial court overruled the motion to dismiss on all grounds except that of laches, and dismissed the bill for that reason.

Appellant appeals from the judgment of dismissal, and the assignments of error relate to the subject of laches alone. None of the defendants appealed. We have stated the proceedings in the court below with some particularity in order to show that the question of whether the suit has been barred by laches is the only one before us. It would serve no useful purpose to set out the allegations of the bill in full, and only those portions thereof will be stated as bear upon the question of laches.

The Ryan Bros. Cattle Company was incorporated under the laws of Kansas November 28, 1887. Matthew Ryan, Sr., deceased, became and was at his decease the owner of 1,660 shares of the par value of $100 each of the capital stock of said company. On September 16, 1901, a corporation of Illinois, known as Rosenbaum Bros. & Co., loaned the Ryan Bros. Cattle Company $300,000 on the promissory note of the cattle company, secured by chattel mortgage. This indebtedness was subsequently reduced to the sum of $41,691.20, and on March 21, 1904, new notes were given for that amount by the cattle company to J. Rosenbaum, who in turn indorsed and delivered the same to appellant, who instituted an action thereon in the district court of Leavenworth county, Kan., which resulted in a judgment in favor of appellant and against the cattle company on May 9, 1905, in the sum of $44,087.50. Executions on said judgment were issued and returned unsatisfied in May and June, 1905. Matthew Ryan, Sr., died testate June 20, 1903, in Leavenworth county, Kan. His will was duly admitted to probate in said county; Matthew Ryan, Jr., being

appointed executor of the will. Subsequently Matthew Ryan, Jr., having died, Jeptha D. Ryan was appointed executor. November 25, 1904, Jeptha D. Ryan resigned, and Mary R. Loftus was appointed administratrix with the will annexed, and still remains such administratrix; the estate of Matthew Ryan, Sr., still remaining unsettled in the probate court of Leavenworth county, Kan. The shares of stock in the Ryan Bros. Cattle Company, owned by Matthew Ryan, Sr., still constitute a part of the estate of Matthew Ryan, Sr., and, together with the real estate mentioned in the bill, remains unadministered. The bill in this case was filed June 22, 1912. Mary R. Loftus, administratrix, is, and at all times since the 9th day of May, 1905, has been, a citizen and resident of the state of New York.

Voluminous facts are stated in the bill for the purpose of showing that the real estate mentioned therein was conveyed to the defendants with intent to defraud the creditors of Matthew Ryan, Sr., and that the facts constituting the fraud were not discovered by appellant until October 24, 1911; the same having been concealed from appellant until certain findings which were made by the court in the case of Helen F. Ryan v. William J. Cullen, 89 Kan. 879, 133 Pac. 430, pending in the district court of Leavenworth county, Kan., were filed. It appears from the foregoing that the suit has for its object: First, the establishment of the amount due on the judgment against the Ryan Bros. Cattle Company as an indebtedness against the estate of Matthew Ryan, Sr., deceased, by virtue of deceased having been a shareholder in said company; second, the satisfaction of said indebtedness out of such property of the estate as still exists. In approaching the consideration of the question of laches, it is necessary to first consider the nature of the liability which is sought to be enforced. On September 16, 1901, the date when the loan was made by Rosenbaum Bros. & Co. to Ryan Bros. Cattle Company, article 12, § 2, Constitution of Kansas, provided:

"Dues from corporations shall be secured by the individual liability of the stockholders to an additional amount equal to the stock owned by each stockholder, and such other means as shall be provided by law; but such individual liability shall not apply to railroad corporations nor corporations for religious or charitable purposes."

Section 1302, General Statutes of Kansas 1901, provided for the enforcement of the liability created by the Constitution, but on March 17, 1903 (Laws 1903, c. 152), the Legislature of Kansas repealed all provisions for the enforcement of the constitutional provision above quoted, and subsequently, at the general election in 1906, the constitutional provision itself, which created the liability sought to be enforced, was abrogated.

The Supreme Court of the United States and the Supreme Court of the state of Kansas, however, have decided that the constitutional provision herein quoted and the laws with reference thereto became a part of any contract made with a corporation, which created a liability for a debt during the time such laws were in force, and that the obligation of such contracts remained unimpaired, notwithstanding the repeal of the laws which created the liability. Douglass v. Loftus

et al., 85 Kan. 723, 119 Pac. 74, Ann. Cas. 1913A, 378; Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380; Whitman v. Bank of Oxford, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587. It has also been decided that the stock liability sought to be enforced in this action is in its nature contractual. Woodworth v. Bowles, 61 Kan. 569, 60 Pac. 331; Howell v. Manglesdorf, 33 Kan. 194, 5 Pac. 759; Whitman v. Oxford National Bank, 176 U. S. 559, 20 Sup. Ct. 477, 44 L. Ed. 587.

The appellant's cause of action accrued in June, 1905, at the time the executions were returned unsatisfied. Douglass v. Loftus, 85 Kan. 720, 119 Pac. 74, Ann. Cas. 1913A, 378. It appears that about seven years elapsed from the time the cause of action accrued until the bill was filed. Section 17, Code of Civil Procedure of the state of Kansas (Gen. St. 1909, § 5610), provides as follows:

"Civil actions, other than for the recovery of real property, can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards: * * * Second, within three years; an action upon contract, not in writing, express or implied; an action upon a liability created by statute, other than a forfeiture or penalty."

Section 5613, General Statutes of Kansas 1909 (Code Civ. Proc. § 20), reads as follows:

"If when a cause of action accrues against a person he be out of the state, or has absconded or concealed himself, the period limited for the commencement of the action shall not begin to run until he comes into the state, or while he is so absconded or concealed; and if after the cause of action accrues he depart from the state, or abscond or conceal himself, the time of his absence or concealment shall not be computed as any part of the period within which the action must be brought: Provided, this act shall not apply to any foreign corporation authorized to do business in the state upon which service of process can be had within the state."

[1] As bearing directly upon the question of laches, we may first consider whether the statute of limitations, above stated, ever ran against the claim of appellant, so far as the estate of Matthew Ryan, Sr., is concerned. The solution of this question depends upon the further question as to whether appellant could have established the alleged stock liability of Matthew Ryan, Sr., without making Mary R. Loftus, the administratrix, a party. We do not think he could. It is true that no personal judgment is claimed or could be rendered against Mary R. Loftus except in her representative capacity, but the liability sought to be established could not have been established in the lifetime of Matthew Ryan, Sr., without making him a party to the proceeding. Being dead, the liability may not be established without making his personal representative a party. No condition of circumstances occurs to us that would allow the establishment of a stock liability against the estate of a deceased person, unless the personal representative provided by law was in court. The probate court had no power or authority to establish this liability. Douglas v. Loftus, supra. We are now speaking of enforcing the liability against the estate of Matthew Ryan, Sr., deceased, and will subsequently consider the case with reference to the real estate now in the hands of fraudulent vendees, as is alleged. That Mary R. Loftus was a neces-

sary party to a suit to establish the stock liability of Matthew Ryan, Sr., deceased, against his estate is decided in the following cases: Wells v. Wells, 71 Ind. 509; Smith v. Turley, 32 W. Va. 14, 9 S. E. 46; McGlaughlin v. McGlaughlin, 43 W. Va. 226, 27 S. E. 378.

[2] That section 5613, supra, applies to the personal representative of the deceased person's estate is decided by the following cases: Hayden v. Pierce, 144 N. Y. 512, 39 N. E. 638; Titus v. Poole, 145 N. Y. 414, 40 N. E. 228; Conolly v. Hyams, 176 N. Y. 403, 68 N. E. 662; Jennings v. Browder, 24 Tex. 192; Smith v. Arnold, 69 Tenn. (1 Lea) 378;' 18 Cyc. 935.

In Hayden v. Pierce, supra, it was said:

"The learned counsel for the defendant suggests that to hold that the defendant's absence from the state operated to enlarge the time for bringing the action would enable the executor or administrator of a deceased person, residing in another state, to delay the settlement of the estate indefinitely. * * * It may be quite true, as urged, that the plaintiff could have commenced its action within six months, so as to have avoided any question as to the bar of the statute, but that consideration is not now pertinent to the inquiry. The question is not what the plaintiff might or could have done, but what she was obliged to do in order to save her rights. The absence of the defendant (a testatrix of the estate of the deceased person) from the state operated to enlarge the time for the commencement of the action, under the general provisions of chapter 4, which apply to this case, and hence the claim was not barred."

In Anglo-American Land, M. & A. Co. v. Lombard, 132 Fed. 721, 68 C. C. A. 89, it was held by this court that the statute of limitations of Kansas is tolled as to an action to enforce a stockholder's liability while the person liable is out of the state. We are of the opinion, therefore, that the continued absence of the administratrix from the state of Kansas tolled the statute of limitations, and that it had not run when the bill was filed, so far as the estate of Matthew Ryan, Sr., is concerned. We are further of the opinion that no proceeding in rem would have been of any benefit to the appellant, for the plain reason that he could never have had a claim of any kind against the estate of Matthew Ryan, Sr., deceased, until he had established the stock liability of Matthew Ryan, Sr., and that liability could not be established without the presence of the personal representative of the deceased in court. The assets of the estate of Matthew Ryan, Sr., deceased, until his debts were paid were in the custody of the law and not subject to mesne or final process from any court. 2 Woerner, Am. Law Admin. (2d Ed.) pp. 882, 815, § 392; Achenbach, Adm'x, v. Pomeroy Coal Co., 2 Kan. App. 357, 42 Pac. 734.

Having no claim against the estate of Matthew Ryan, Sr., deceased, we do not think appellant was charged with the duty of applying to the probate court to have a resident administrator appointed. It is doubtful whether he would have had any right to do so; certainly he was not guilty of laches in not doing so. We are also satisfied that the allegation in regard to the concealment of the fraud as to the real estate, and that it was not discovered until about six months prior to the filing of the bill in this case, sufficiently excuses any delay, so far as the real estate is concerned, if a different statute of limitations should be held to apply to that. Certainly there is no statute which

would bar the right of action within six months from the discovery of the fraud.

[3] The defense of laches has so often been made the subject of discussion in this court that it is unnecessary to quote from all the decided cases. The general principle which guides our action has been stated many times.

In Burgess v. Hillman, 200 Fed. 929, 119 C. C. A. 225, we said:

"The rule in such cases (laches) has been ably stated by Judge Sanborn in delivering the opinions of this court in Kelley v. Boetcher, 85 Fed. 55, 29 C. C. A. 14; Boynton v. Haggart, 120 Fed. 821, 57 C. C. A. 301; Wyman v. Bowman, 127 Fed. 257, 62 C. C. A. 189; and Wilson v. Plutus Mining Co., 174 Fed. 317, 98 C. C. A. 189. In Kelley v. Boetcher, it was said: 'In the application of the doctrine of laches, the settled rule is that the courts of equity are not bound by, but that they usually act or refuse to act in analogy to, the statute of limitations relating to actions at law of like character. [Citing cases.] The meaning of this rule is that, under ordinary circumstances, a suit in equity will not be stayed for laches before, and will be stayed after, the time fixed by the analogous statute of limitations at law; but if unusual conditions or extraordinary circumstances make it inequitable to allow the prosecution of a suit after a briefer, or to forbid its maintenance after a longer, period than that fixed by statute, the chancellor will not be bound by the statute, but will determine the extraordinary case in accordance with the equities which condition it.'  200 Fed. 931."

In the case above quoted from, the court said further:

"When a suit is brought within the time fixed by the analogous statute, the burden is on the defendant to show, either from the face of the bill or by his answer, that extraordinary circumstances exist which require the application of the doctrine of laches; and, when such a suit is brought after the statutory time has elapsed, the burden is on the complainant to show, by suitable averments in his bill, that it would be inequitable to apply it to his case."

In Davey v. Dodge, 213 Fed. 722, this court again followed the principles above stated.

The real questions for decision in this case, as in all others of like character, is: First, does the bill present a reasonable excuse for the delay in bringing the suit; second, would it be inequitable, so far as the defendants are concerned, if the relief prayed by the bill should be granted? We think a reasonable excuse has been presented, and we cannot conceive of any injustice which would result to the defendants in allowing the action to proceed. While the lapse of time is an element which courts consider in refusing or granting the defense of laches, time alone ordinarily is not sufficient to constitute the defense, but in addition thereto the situation of the parties must have so changed as to render the prosecution of the suit inequitable. These circumstances usually appear in the form of increased value of real estate, either in the rise of the price thereof or in the making of valuable improvements thereon, the death of witnesses, and any other circumstance which would make it inequitable to allow a suit to proceed. Patterson v. Hewitt, 195 U. S. 309, 317, 25 Sup. Ct. 35, 49 L. Ed. 214; Brown v. County of Buena Vista, 95 U. S. 157, 160, 24 L. Ed. 422; Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 Sup. Ct. 258, 40 L. Ed. 383; Baker v. Cummings, 169 U. S. 189, 208, 18 Sup. Ct. 367, 42 L. Ed. 711; Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738; Alsop v. Riker, 155 U. S. 448, 15 Sup. Ct.

162, 39 L. Ed. 218; Penn Mutual Life Ins. Co. v. Austin, 168 U. S. 685, 698, 18 Sup. Ct. 223, 42 L. Ed. 626; O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 46 L. Ed. 636; Northern Pac. R. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931; Valvona-Marchiony Co. v. Marchiony (D. C.) 207 Fed. 380, 386.

Nothing appears in the case at bar, except the lapse of time, and we think that the absence from the state of Mary Loftus presents, under the facts of this case, a sufficient excuse for the delay.

The decree below is therefore reversed, and the case remanded, with instructions to the trial court to deny the motion to dismiss and allow the defendants to answer the bill, if they shall be so advised.